UNITED STATES DISTRICT COURT
**SOUTHERN DISTRICT OF FLORIDA**
**CASE No:**

**R. J. WOLFE**
**Plaintiff**

**Vs.**

**MERRILL LYNCH a Bank of America Corporation**
**Defendant,**

**Plaintiff's Complaint**

COMES NOW, **ROSS J. WOLFE**, (hereinafter as "Plaintiff"), on behalf of himself, by and through the undersigned counsel hereby brings this action against Defendants, **MERRILL LYNCH**, for discrimination under §1983 and Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e, et. Seq., Plaintiff seeks compensatory damages, reasonable attorney fees and costs from Defendants; Plaintiff also seeks Compensatory and Punitive Damages as the result of Defendants retaliation and Constructive discharge.

**JURISDICTION**

This action is brought pursuant to Title VII of the Civil Rights Act of 1964 as amended for employment discrimination. Jurisdiction is specifically conferred on this Court by 42 USC § 2000e et. seq. Equitable and other relief are also sought under 42 U.S.C§ 1983 et seq. This Court has Jurisdiction under 28 U.S.C. §§ 1331 and 1343

**VENUE**

Venue is proper in the United States District Court for the Southern District of Florida as; Plaintiff was employed by Merrill Lynch in Miami-Dade County Florida, unlawful practices took place in Miami-Dade County Florida and actions and events that are the basis of this Complaint occurred within this Judicial district, venue therefore properly lies in this Court.

**PARTIES**

Plaintiff, is a Muslim-Arabic male and Citizen of the United States and resident of the state of Florida. At all times relevant to this suit Plaintiff was employed with the Merrill Lynch beginning on March 25, 2011.

At *all times relevant, Defendant Merrill Lynch was a person engaged in an industry of affecting commerce within the meaning of section 2000e (a)(b).*

Cynthia, Faith Heeg, Barry Rubin are all white person, and the various immediate supervisors and managers to Plaintiff. Cynthia, Faith Heeg and Barry Rubin also worked in close proximity to Plaintiff. Cynthia, Faith Heeg, and Barry Rubin and all others named in the Complaint are being sued in their official Capacity only.

And at all times material hereto, Merrill Lynch breached its duty by providing an hostile environment, fostering and creating a space of racial and religious discrimination, a hostile work environment, *inter alia* in violation of its duty under The Civil Rights Act of 1964 Title VII 42 U.S.C. § e-2(a)(1).

**<u>STATEMENT OF FACTS</u>**

1. Merahs Yousef Diab the Plaintiff applied for a position on his own in the normal processes of hiring, in Merrill Lynch's( from henceforth referred to as Lynch) Aventura office and was rejected. The Plaintiff has a Master's in Business Administration from the University of Miami. He was Business finance Consultant and a financial Advisor beginning in 2008. The plaintiff is qualified and capable to perform the duties required in the position he applied for. After this rejection Merahs Yousef Diab developed a personal connection with Jeff a Regional Manager of Lynch, who helped him secure a position in the Aventura Office. Merahs Yousef Diab worked for Lynch from March 2011 until November 2014 as a Financial Advisor. In his entire time in the Aventura Office, Merahs

Yousef Diab did not see anyone else of Muslim, Islamic or Arab descent as an employee in that office. He knew himself as the single Muslim person of Arabic Descent.

2. Merahs Yousef Diab was qualified for positions on teams that rejected him as a teammate, however candidates of a different religion, ethnic group and national origin where chosen instead of him, even though he approached the team's first. Within the first 3 months Merahs Yousef Diab attempted to get on a Team in the Aventura Office. None of the Team Leaders would allow him on a Team. Diab was rejected for various opportunities on teams within Merrill and was eventually terminated on November 7, 2014 for discrimination based on his race, religion and national origin. Diab had applied for this position to be on a Team with Jesus Romeo and was told the Team Leader needed no new Team members. However, shortly afterward the Jesus Romeo the Team Leader, hired two Hispanic team members. Whenever there was a news stories on the television about terrorists, co-workers, in the presence of any and all present, made comments like "Islam is a violent religion of hate", " I wish they would just kill all those dirty A-rabs", "Grow some balls US and just nuke all the Arabs".

3. After some time with no success Merahs Yousef Diab enlisted the help of the regional Manager, who forced a Team Leader to take Merahs Yousef Diab (henceforth referred to as Diab). Jeff the Regional manager again helped plaintiff (thru) then Aventura Branch Manage who forced Diab on the Team with Barry Rubin. Diab notes that in his four years with Merrill Lynch, he never once saw another Muslim-Arabic person in either in the Aventura office, Delray office or Boca Raton office. The South Florida branches in Diab's subjective experience discriminate against people from middle-eastern background and he is a victim of this deliberately cultivated and permitted environment. He was hired only because he connected with Jeff, a regional Manager of Florida, Alabama and Georgia for Lynch.

4. It is normal and customary for Junior advisors to be trained by the Team Leader/Senior advisor in the industry. The training may include cold call training, setting up appointments, comportment and conversations at appointment, all designed to train Junior advisors how to sell the variety of financial products being offered. Barry did no such thing with Diab. Instead he handed him a book with thousands of cold leads, meaning contact information for potential clients who were very unlikely to yield any business. During this time Diab was not able to meet his "goals" for sales and clients, he needed to make as a junior advisor. Being that he was learning himself he went into the office from 7am to 9pm in order to attempt to meet his goals.

5. Barry Rubin paid for one training module after Diab, begged him to pay for telling him he could not afford the $300.00 it took to pay for this training. It is Common for trainings necessary to be paid for by Team Leaders. Barry also never once took Diab with him to an appointment advised or train him in anything at all. Part of the atmosphere of the office, is that many of the advisors have televisions in their offices which generally streams CNBC. It was common for some new to be on about "terrorist attacks, or threats." Invariably whenever there was such news, someone would voice the opinion, "that either all Muslims should be wiped out. Or get rid of the Arabs". The plaintiff has a very "ethnic" name and dealt with many uncomfortable situations in meeting others and introducing himself in the offices of Merrill Lynch. There are daily News Reports about terrorism, whether its discussions or informing in regards to an event. In 2011 there where the Mumbai Bombings, and there has been the Isis Group and the American War in the Arab regions, as well as news about Palestinians, and Syria etc. etc. This was a constant and daily conversation in the presence of the plaintiff as far as terrorism and linking, Arabs, Muslims, Islam to terrorism, and hearing he should be dead because of who he is.

6. After approximately 4 months Barry Rubin, took Diab off his Team. Diab Moved from the Aventura office to the Delray Office: hoping to improve his lot and find a Team he moved his life. In

this time the end of 2012 beginning of 2103 a new Complex Manager came to Delray, who upon being introduced to Diab, told him in a meeting publicly she didn't like him and didn't think he would succeed. Within a few weeks Cynthia, the complex manager wrote Diab up for not meeting his goals. Diab begged Barry for his assistance, so Barry eventually gave him a potentially lucrative lead that he had not been able to contact for 5 years. Eventually Diab secured this client. However, Cynthia fired Diab, before the numbers and calculations came in that he made his numbers. Diab called Jeff, who brought it to Cynthia's attention that Diab had met his "quota" and he was un-fired. During this time Diab had a stroke, the first at 35 years old. Diab had three strokes while employed by Lynch. His neurologist attributes the strokes to stress and anxiety. He lived in constant fear of being harassed and called out for his Muslim-Arab ethnicity.

7. Following this Diab was moved to the Boca Raton office to be under' Cynthia's direct supervision. In the Delray office as well as in the Boca Office, it was common place for Senior advisors as well as all levels of employees and Team members to have conversations about solving the Arab problem. People would say "kill the problem." It was also common place to be asked by advisors on being introduced to Diab to ask if he was Jewish or Arab particularly in the Aventura office.

8. Faith Heeg a supervisor in Compliance was hostile and derogatory to Diab in the Boca Office. After all Wolfe had faced and the difficulty he experienced himself having not been able to get ahead, or integrate in any of the office he was: in as well as the feeling that he had to hide his ethnicity heritage and religion every day, he lived with constant anxiety and stress. He was told by Lynch clients that it would be difficult for them to hire him because of his name it seemed so Arab. Diab changed his name in 2013 to R J Wolfe the plaintiff will hereinafter be referred to as **Wolfe**. He applied for the change and it was approved in July of 2013. In August of 2013, Wolfe had a 3rd stroke.

9. In the presence of Wolfe, Faith Heeg in essence told Wolfe that he was a terrorist. She said at another point" Islam is a violent and evil religion". She regularly made disparaging comments in Plaintiffs presence about Islam, likening all Muslims to terrorists. Wolfe went back to school; he needed to change his employee code to be a part-time financial advisor. Faith Heeg who had been with Lynch for approximately 20 years at that point, miscoded his employment status. Thus he was unable to have access to necessary resources. This rendered his ability to function as a financial advisor ineffective. His pay decreased to even less than he was earning when he started at Lynch. Eventually he was "let go". Because of his designation even the severance he was offered was not that of a Financial Advisor.

**COUNT I**

**DISCRIMINATION BASED ON NATIONAL ORGIN UNDER TITLE VII**

**AND §1983**

All conditions precedent for the filing of the Suit has been met. Plaintiff re-alleges and incorporates all allegations supra herein. Title VII prohibitions on harassment based on national origin, race, color, or sex, includes: workplace discrimination or harassment against individuals who are - or are perceived to be - Muslim, Arab, Afghani, Middle Eastern or South Asian (Pakistani, Indian, etc.).

**The law's prohibitions include harassment or any other employment action based on any of the following:**

- **Affiliation: Harassing or otherwise discriminating because an individual is affiliated with a particular religious or ethnic group. For example, harassing an individual because she is Arab or practices Islam, or paying an employee less because she is Middle Eastern.**
- **Physical or cultural traits and clothing: Harassing or otherwise discriminating because of physical, cultural, or linguistic characteristics, such as accent or dress associated with a particular religion, ethnicity or country of origin. For example, harassing a woman wearing a hijab (a body covering and/or head-scarf worn by some Muslims), or not hiring a man with a dark complexion and an accent believed to be Arab.**

- **Perception: Harassing or otherwise discriminating because of the perception or belief that a person is a member of a particular racial, national origin, or religious group whether or not that perception is correct. For example, failing to hire an Hispanic person because the hiring official believed that he was from Pakistan, or harassing a Sikh man wearing a turban because the harasser thought he was Muslim.**

- **Association: Harassing or otherwise discriminating because of an individual's association with a person or organization of a particular religion or ethnicity. For example, harassing an employee whose husband is from Afghanistan, or refusing to promote an employee because he attends a Mosque.**

- ***Harassment:*** **Employers must provide a workplace that is free of harassment based on national origin, ethnicity, or religion. They may be liable not only for harassment by supervisors, but also by coworkers or by non-employees under their control. Employers should clearly communicate to all employees - through a written policy or other appropriate mechanism - that harassment such as ethnic slurs or other verbal or physical conduct directed toward any racial, ethnic, or religious group is prohibited and that employees must respect the rights of their coworkers. An employer also should have effective and clearly communicated policies and procedures for addressing complaints of harassment and should train managers on how to identify and respond effectively to harassment even in the absence of a complaint. (http://www.eeoc.gov/laws/types/fs-relig_ethnic.cfm)**

10. Defendants discriminated against Wolfe on the basis of his national origin in violation of Title VII §1983 by denying him the same terms and condition of employment available to employees who are not Muslim or of Arabic descent including but not limited to subjecting him to disparate working conditions and denying him the opportunity to work in an employment setting free of unlawful harassment, 42 U.S.C. §200 -2(a)(1)

11. Plaintiff a Muslim/Arab American was targeted with belittling comments, about Arabic peoples needing to be all killed, as a problem to be gotten rid of and as a terrorist, inter al*ia.* He was repeatedly subjected to offensive jokes, slurs, epithets, as well direct impediments to his work performance.

12. Plaintiff suffered humiliation, embarrassment; being debased, belittled and experienced being in a hostile work environment thus suffered physical and mental anguish as a result of Defendants volition of his Civil rights.

13. Plaintiff was being pushed to leave by branch Supervisors and Managers who took deliberate actions in nurturing an uncomfortable, hostile, environment by allowing Plaintiffs coworkers to harass, tease, insult and humiliate him. Plaintiffs working conditions where objectively unbearable and he was constructively discharged.

Merill Lynch created a hostile Works environment, a racially discriminatory work environment in violation of Title VII and §1983. The environment fostered discrimination against WOLFE with respect to his race, religion and national origin. 42U.S.C. §2000e – 2(a)(1).

**WHEREEFORE, Plaintiff prays this Court find defendants actions a violation of Title VII and §1983 awarding monetary relief of $300,000.00 for Compensatory Damages and Punitive Damages under §1983 as well as all costs and attorney fees.**

**COUNT I**

**RACIAL HARASSMENT TITLE VII**

14. Plaintiff re-alleges all the allegations in paragraphs 1 through 13 and incorporates them by reference herein.

15. Wolfe was set up for failure upon on being hired. The name he used at the time Merahs Diab, disclosed his ethnicity. The fact that he was not allowed on a Team, nor trained amounted to a demotion in employment or a denial of compensation. This amounted to a serious material change in the terms, circumstances and conditions of employment.

16. Wolfe did not see any of the other similarly situated white, Hispanic or other race coworkers being subjected to the same offensive behavior.

**Wherefore Plaintiff requests this Court find Defendants in violation of Title VII and award Plaintiff monetary relief and Compensatory damages of $300,000.00 as well as all costs and attorney fees**

**COUNT II**

**RACIAL DISCRIMINATION/HARASSMENT §1983**

17. Plaintiff re-alleges all the allegations in paragraphs 1 through 13 and incorporates them by reference herein.

18. Defendant discriminated against Plaintiff in Violation of 42 USC §1983 on the basis of him race/color (Muslim/Arabic person) by denying him the same terms and condition of employment available to employees who are not Muslim or Arabic, including but not limited to, subjecting him to disparate working conditions and denying him the opportunity to work in an employment setting free of unlawful harassment.

19. Plaintiff a Muslim American ale, is a member of a protected class. He experienced adverse action, and was subjected to a hostile work atmosphere.

20. Wolfe was subjected taunts due to his race, like, being told he should be killed and is the problem, a terrorist.

21. Lynch has an obligation to Discipline and supervise its employees. In this particular circumstance, Lynch failed. Various Supervisory Lynch employees where aware and present and participatory in the harassment taking place against Plaintiff. This Deliberate Indifference, failure to discipline or reasonable supervise employees, amounts to a created “custom and policy” by Lynch that wrongfully discriminated against Wolfe.

22. Defendants willfully intentionally and systematically discriminated against Wolfe on the basis of his race and color, being an Muslim/Arabic. The Lynch through its Managerial staff denied Wolfe the same terms and condition of employment available to employees who are not Muslim/Arabic man,

including but not limited to subjecting him to disparate working conditions and denying him the opportunity to work in an employment setting free of unlawful harassment.

23. Wolfe was targeted with racial, religious and national origin belittling comments, and taunts, as a result Plaintiff suffered humiliation embarrassment; being debased, belittled and experience being in a hostile work environment which caused him to suffer physical and mental anguish as a result of Defendants violation of his Civil Rights.

24. The Lynch has an obligation to Discipline and supervise its employees. In this particular circumstance, the Lynch failed. Plaintiffs Supervisor was aware and present and participatory in the harassment taking place against Plaintiff. Lynch Deliberate Indifference, failure to discipline or reasonable supervise their employees, Plaintiffs co-workers amounts to a created “custom and policy” by the Lynch that wrongfully discriminated against Wolfe.

25. He suffered financial damages as a result of the deliberate actions and failures to act done by.

**Wherefore Plaintiff requests this Court find defendants in violation of §1983 and award monetary relief and Compensatory Damages as well as all costs and attorney fees.**

**COUNT III**

**HOSTILE WORK ENVIRONMENT**

26. Plaintiff, re-alleges all the allegations in paragraphs 1 through 13 and incorporates them by reference herein.

27. Wolfe a Muslim/Arabic male was subjected to taunts ridicule, offensive language with racial as well life threatening tones. The conversation varied from vulgarity, to being labeled a terrorist as well being said he is better off dead.

28. The environment was such that a reasonable person would not wish to go to work every day. Plaintiff subjectively found the environment hostile. The hostility was motivated and due to Plaintiff being Muslim/Arabic.

29. In the totality of the circumstance, with the impediments in being able to perform, Different supervisors saying he/Muslim's, are terrorist and should die all created a hostile environment by Defendants in violation of Title VII. The conduct of the Defendant was carried out by Plaintiffs immediate supervisor as well as in his vicinity and Lynch took no authentic action in redressing the circumstances. LYNCH's Plaintiffs supervisor helped create the place and space for hostility.

30. Wolfe suffered Mental and Physical anguish, including but limited to depression anxiety, fear, and exhaustion as a result of the severe and pervasive hostility.

31. Plaintiff himself (subjectively) suffered emotional and mental anguish as result of defendant's retaliation (the behavior continued and increased with Cynthia and Heeg) to him complaints and reporting of their harassing and hostile conduct.

**WHEREEFORE, Plaintiff prays this Court find defendant's actions a violation of Title VII and awarding monetary relief of $300,000.00 for Compensatory Damages as well as all costs and attorney fees.**

**COUNT IV**

**RETALIATION TITLE VII**

32. Plaintiff re-alleges the allegations in paragraphs 1 through 13 and incorporates them by reference herein.

33. Wolfe engaged in the protected activity of making a complaint about being miscoded in his employment on more than one occasion.

34. In response to the complaint, the behavior continued, in the form of Heeg saying she could not figure out how to change the code once it was placed in the system. This same supervisor, in the presence of other co-workers, said Arabs should be killed.

35. But for Defendants actions, plaintiff would still be employed with the Lynch. Heeg 's adverse actions constructively discharged him.

36. In the totality of the circumstance, with the constant comments of Arabs being terrorist,, and should die, as well as that being said by co-workers in managerial and co-workers supervisory positions all inappropriate for a work environment all created a hostile environment by Defendants in violation of Title VII. The conduct of the Defendant was carried out by Plaintiffs immediate supervisor as well as in his vicinity and Merrill Lynch took no authentic action in redressing the circumstances.

37. Defendant has discriminated against Wolfe on the basis of his race being Muslim/Arabic by denying him the same terms and conditions of employment and creating and fostering a hostile work environment due to him being a Muslim/Arabic person.

**WHEREEFORE, Plaintiff prays this Court find defendant's actions a violation of 42.U.S.C and awarding monetary relief for Compensatory Damages as well as all costs and attorney fees.**

**COUNT V**

**RETALIATION §1983**

38. Plaintiff re-alleges and incorporates by reference herein the factual allegations in paragraphs 1 through 1

39. Section 1983 prohibits employers from status discrimination as well as retaliating against employees based on an employee's race and opposition to employment discrimination or complaint of discrimination. See 42 U.S.C. S20003-3(a).

40. Defendant retaliated against Wolfe for opposing and complaining about Lynch's discriminatory practices against him, and hostile work environment created and fostered, by not offering allowing or fostering customary training accommodation, or resources.

41. As a direct and proximate result of the Heeg's unlawful and retaliatory conduct in violation of Title VII, plaintiff suffered severe mental anguish and emotional distress, anxiety, to the point of suffering a stroke.

42. Defendant retaliated against Wolfe in violation of Section 1983 opposing and complaining about Lynch's discriminatory practices against him, and hostile work environment created and fostered, by not providing agreed upon accommodation, of providing training or resources allowing and fostering co-workers and other supervisor to threaten and belittle, by making insidious comments in regards to his national origin, race and religion.

43. As a direct and proximate result of the Lynch of unlawful and retaliatory conduct in violation of §1983, plaintiff suffered severe mental anguish, including and not limited to; humiliation, embarrassment, emotional distress, anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to monetary damages.

44. Defendant's unlawful retaliatory conduct in violation of §1983 was outrageous and malicious and intended to injure Wolfe and was done with conscious disregard of Wolfe's Civil rights.

45. Merrill Lynch has an obligation to Discipline and supervise its employees. In this particular circumstance, Lynch failed. Heeg a person in a Supervisory and Managerial position was aware and present and participatory in the harassment taking place against Plaintiff.

46. Heegs failure to change the code, was known by the Branch Manager/Director, no action was taken in resolving the issue. These adverse actions were in retaliation of Wolfe's complaints of Defendants discriminatory and harassing behavior that violates Title VII as well as §1983.

**WHEREEFORE, Plaintiff prays this Court find defendant's actions a violation of Title VII and awarding monetary relief as well as all costs and attorney fees.**

**COUNT VI**

**CONSTRUCTIVE DISCHARGE BASED ON RACE**

**AND NATIONAL ORIGIN UNDER TITLE VII AND §1983**

47. Plaintiff, re-alleges the allegations in paragraphs 1through 13 and incorporates them by reference herein.

48. Title VII prohibits employers from status discrimination as well as retaliating against employees based on an employee's opposition to employment discrimination or complaint of discrimination. See 42 U.S.C. S20003-3(a).

49. At all times during him employment with Defendants Plaintiff Wolfe performed him duties with utmost diligence and competence.

50. Faith Heegs actions and conduct discriminating against Wolfe due to his national origin and race; created working conditions so intolerable and Plaintiff was eventually let go. This was a deliberate action on the part of Faith Heeg. The behavior was based on ethnicity, Wolfe a person of Muslim/Arabic descent was a victim to this intimidation hostility and humiliation constantly at work. As a result of the Lynch's aforesaid conduct, Wolfe was deprived of his right to a work environment free from discrimination, harassment and retaliation.

51. Lynch's Supervisors and Managers, heard, comments being made by workers during news broadcasts that referred to Arabs as Terrorist and jokes about killing them all, and getting rid of the problem.

52. The acts taken towards Wolfe, was carried out by managerial employees in front of co-workers regarding the discrimination, harassment and hostile environment created for him at work.

53. During any event, of terrorism, the comments jokes and atmosphere of hostility aimed at Wolfe escalated and his disquiet increased.

54. Through its Supervisors and managerial staff the Lynch engaged in a Policy and Custom practice of treating Muslim/Arabic persons favorable than similarly situated persons of any other race or ethnicity. The failure of any disciplinary action, diversity training or actual redress was deliberate indifferent to any official policy that may have existed for Defendants. This practice ultimately becomes the policy by which the Lynch operated. Within Plaintiff's entire time of employment no

policy or procedure was followed to stop this behavior and it so happens that the person doing the "pushing" out of the position was Wolfe's supervisor.

55. Lynch denied Wolfe equal pay to that earned by the similarly situated team members or Financial Advisors. Wolfe was denied opportunities for promotion that he was qualified for and interested in.

56. The Lynch's custom and practice of engaging discriminating against its Muslim/Arabic persons based on race and national origin, violates Title VII of the Civil Rights Act.

57. Plaintiff was constructively discharged by being pushed out by a "miscoded employee status." Which made him unable to function in his capacity as a financial advisor?

58. But for the constant racial slurs, the miscoding of his employment status by Faith Heeg then Wolfe would have not left him position with Merrill Lynch.

59. Defendants conduct directly and legally caused Wolfe to suffer the harm and damaged alleged herein.

**WHEREEFORE, Plaintiff prays this Court find defendant's actions a violation of Title VII and awarding monetary relief of $300,000.00 for Compensatory and Punitive Damages as well as all costs and attorney fees.**

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

**Wherefore, ROSS J Wolfe, demands judgment against the Defendants for the following;**

**A.** Find that Defendant Violated Title VII and discriminated against Plaintiff on the basis of, race, national origin, creating and maintaining a hostile work environment, and constructively discharging Plaintiff.

**B.** For Compensatory Damages for Race and National Origin based Discrimination in Violation of Title VII and §1983

**C.** For Compensatory Damages for the creation and maintenance of a hostile work environment in violation of Title VII and §1983

**D.** For Compensatory Damages for Constructive Discharge and Retaliation in violation of Title VII and §1983.

**E.** For Punitive Damages under §1983 for the violation of all enumerated Constitutional Civil Rights Violations in the amount of $33,000,000.00

**F.** For all costs and expenses

**G.** For prejudgment interest at the maximum legal rate

**H.** An award of reasonable attorney's fees pursuant to Florida Statute Chapter 57

**I.**

**J.** Such further relief as this court deems just and proper

DATED THIS __16__DAY of March, 2016.

__/s/ Alexis D Benjamin___
Alexis T-D Benjamin, Esq.
Alexis Day Benjamin, PLC
18441 NW 2nd Avenue, Suite 218, D
Miami Gardens, Florida, 33169
Telephone: (305)816-6740
Facsimile: (954)272-7075
Email:Ourcommunitylaw@gmail.com
E.Service:Ourcommunitylaw.e.service@gmail.com
/ Florida Bar No. 0038267